UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JUSTIN SULLIVAN,

                           Plaintiff,

              -against-                                 **ORDER**
                                                      19 CV 6500 (MKB) (CLP)

AIRCRAFT SERVICES GROUP, INC. and
KERRY SAILLER,

                           Defendants.
----------------------------------------------------------X
**POLLAK**, Chief United States Magistrate Judge:

       On November 18, 2019, plaintiff Justin Sullivan commenced this action against defendants Aircraft Services Group, Inc. and Kerry Sailler, alleging claims of libel per se, intentional interference with contract and with advantageous business relationships,[1] and violations of New York's General Business Law 349. (Compl.[2]) On March 31, 2020, plaintiff Sullivan amended the Complaint (Am. Compl.[3]). Currently pending before this Court is defendants' motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure, based on plaintiff's failure to comply with this Court's Order of November 29, 2021. For the reasons set forth below, the defendants' motion is granted in part.

## BACKGROUND

       Plaintiff Sullivan alleges that he is a private airplane charter broker, operating as Private FLITE. (Am. Compl. ¶ 9). According to the Complaint, defendant Aircraft Services Group, Inc. ("ASG"), and Kerry Sailler ("Sailler"), ASG's director of charter sales, published allegations of

---

[1] On March 8, 2021, plaintiff's claim of Intentional Interference with Contract and Interference with Prospective Business Relationships was dismissed by the district court. (ECF No. 42).
[2] Citations to "Compl." refer to plaintiff's Complaint filed on November 18, 2019. (ECF No. 1).
[3] Citations to "Am. Compl." refer to plaintiff's Complaint filed on March, 31 2020. (ECF No. 27).

1

fraud and possible criminal conduct by plaintiff in an email dated October 3, 2019. (Id. ¶¶ 26–29). The email was allegedly sent to 150 private air charterers and then sent on to 500 more, including the suppliers and customers of plaintiff's broker business. (Id. ¶¶ 30–32). Plaintiff claims that the email targeted plaintiff's business which had nothing to do with the alleged misconduct identified in the email, including allegations that plaintiff had converted other charter brokers' monies. (See id. ¶¶ 30, 37, 38, 41–44, 47–48).

On November 29, 2021, this Court issued an Order requiring plaintiff to produce certain discovery, including documents relating to his claim for damages, and evidence that he reported the theft of his computer to the police, thus preventing him from producing native versions of certain documents. (Order[4] at 8–9). Specifically, plaintiff was directed to produce by January 7, 2022, the following: 1) relevant financial information, including all financial statements relating to his broker commissions from 2017 to the present, and all documents relating to flight quotes issued by plaintiff from October 3, 2019 to the present, including any information relating to successful bookings made as a result of those quotes; 2) plaintiff's tax returns dating back to 2017; and 3) the police report relating to the theft of plaintiff's computer. (Id.) The Court's Order also directed plaintiff to provide a sworn statement confirming when no responsive documents existed what steps he had taken to search for such documents and why they no longer existed. (Id. at 9).

On January 26, 2022, defendants on behalf of all parties submitted a status report, in which defendants sought sanctions including dismissal of plaintiff's complaint for plaintiff's failure to produce his financial records or tax documents. (Report[5] at 2). In the Report, defendants noted that they had asked for plaintiff's input before filing the status report and after

---

[4] Citations to "Order" refer to this Court's Order dated November 29, 2021. (ECF No. 51).
[5] Citations to "Report" refer to the status report submitted on January 26, 2022. (ECF No. 52).

4:00 p.m. on January 26, when the status report was due, plaintiff purported to produce some responsive documentation. (Id. at 3). However, because of the late production, defendants were unable to review the documents prior to submitting the court-ordered status report. (Id.) On February 15, 2022, this Court Ordered plaintiff to show cause why it should not grant defendants' request for sanctions for plaintiff's failure to comply with the Court's November 29, 2021 Order.

On March 18, 2022, plaintiff filed a letter response to the Order to Show Cause. (Pl.'s Ltr.[6]). Plaintiff argued that defendants' letter should be set aside because defendants failed to meet and confer on the discovery issues prior to filing the motion for sanctions.[7] (Id. at 1–2). Plaintiff further claimed that he had complied with defendants' requests "to the best of his ability," and in any event, some of the discovery requests were no longer relevant. (See id. at 3–5). Attached to plaintiff's letter were two affidavits, dated January 26, 2022, and March 18, 2022,[8] signed by plaintiff under the penalty of perjury attesting to what had and had not yet been produced in response to the November 29, 2021 Order. (Pl.'s Ltr., Exs. A & B).

On March 25, 2022, defendants submitted a letter motion for sanctions, contending that despite the Court's clear Order directing the production of documents and/or the sworn statement that no responsive documents existed, plaintiff failed to provide either by January 7, 2022. (Defs.' Ltr.[9] at 2). Further, defendants complained that plaintiffs' filings had been littered with

---

[6] Citations to "Pl.'s Ltr." refer to the letter response filed by plaintiff dated March 18, 2022. (ECF No. 53).

[7] The Court notes that plaintiff has complained that defendants' motion should be denied for failure to comply with the meet and confer requirements of the Federal Rules. Defendants have made multiple attempts to obtain compliance with their requests for discovery, including multiple letters leading up the issuance of the November 29, 2021 Order, as is required by Federal Rule of Civil Procedure 37(a)(1). No further meet and confer was necessary given plaintiff's failure for over two months to comply with the Court's Order and given that this motion was brought pursuant to Federal Rule of Civil Procedure 37(b).

[8] In his letter, plaintiff mistakenly says the date on this affidavit is March 17, 2022 when the affidavit itself is dated March 18, 2022.

[9] Citations to "Defs.' Ltr." refer to the letter response filed by plaintiff dated March 25, 2022. (ECF No. 54).

3

inconsistencies. (Id. at 2–3). Then, on March 30, 2022, the Court heard argument on the motion for sanctions.

## DISCUSSION

I. Legal Standards for Sanctions under Rule 37 of the Federal Rules

It is clear that sanctions may be imposed upon a party or counsel who deliberately fails to comply with a court order. See, e.g., Drywall Tapers, Local 1974 v. Local 530, 889 F.2d 389, 394 (2d Cir. 1989), cert. denied, 494 U.S. 1030 (1990); Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981) (explaining "[a] court has the inherent power to hold a party in civil contempt in order 'to enforce compliance with an order of the court or to compensate for losses or damages'" (quoting McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949))). Rule 37 of the Federal Rules of Civil Procedure is the primary, though not the exclusive, mechanism for enforcing a court's discovery orders. See, e.g., World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 158 (2d Cir. 2012) (explaining "Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct").

Rule 37 provides in relevant part that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. Proc. 37(b)(2)(A). In Update Art, Inc. v. Modiin Publishing, Ltd., the Second Circuit described the three purposes behind sanctions under Rule 37:

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

4

843 F.2d 67, 71 (2d Cir. 1988) (citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976) (per curiam), and Cine Forty-Second St. Theatre Co. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979)); see also Southern New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 149 (2d Cir. 2010) (quoting the same provision from Update Art, Inc. v. Modiin Pub'g, Ltd., 843 F.2d at 71). As the court in Baba v. Japan Travel Bureau Int'l, Inc., noted: "'[A]ll litigants . . . have an obligation to comply with court orders. When they flout that obligation[,] they . . . must suffer the consequences of their actions.'" 111 F.3d 2, 5 (2d Cir. 1997) (quoting McDonald v. Head Crim. Ct. Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988)).

An order requiring a party to comply with its discovery obligations or with another party's discovery requests is a necessary predicate to sanctions under Rule 37(b). See, e.g., Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1364 (2d Cir. 1991) (observing that "there must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)"). An order enforceable under Rule 37(b) need not, however, have been issued under a particular rule, so long as its effect was to require a party "to provide or permit discovery." See Fed. R. Civ. P. 37(b)(2)(A); Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, No. 16 CV 1318, 2017 WL 3671036, at *18 (S.D.N.Y. July 18, 2017) (holding "[a] court order directing compliance with discovery requests is a required predicate to Rule 37(b) sanctions") (citing cases). An order need not be written to be enforceable under the Rule. See Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 388 (2d Cir. 1981) (citing cases). Even in the absence of a court order, Rule 37 provides for sanctions where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. Proc. 37(c)(1).

For violations of such an order or a discovery obligation, Rule 37 lists seven possible sanctions, including "striking pleadings in whole or in part," "rendering a default judgment against the disobedient party," and "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. Proc. 37(b)(2)(A)(iii), (vi), (vii).  In addition, the Rule provides that the court may issue an order that certain designated facts be taken as established in accordance with the claim of the party obtaining the order, Fed. R. Civ. Proc. 37(b)(2)(A)(i); see Santrayll v. Burrell, No. 91 CV 3166, 1998 WL 60926, at *3 (S.D.N.Y. Jan. 21, 1998), or may issue an order "prohibiting the disobedient party from . . . introducing designated matters in evidence." Fed. R. Civ. Proc. 37(b)(2)(A)(ii); accord Kang v. Lee, No. 96 CV 1145, 1997 WL 669787, at * 3 (S.D.N.Y. Oct. 27, 1997).

In lieu of or in addition to these sanctions, the Rule requires that the court order the disobedient party, its attorney, or both to pay "the reasonable expenses, including attorney's fees," caused by the failure to comply, unless the court finds the failure "substantially justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Indeed, courts have awarded attorney's fees and costs where sanctions were appropriate but where the court found that the sanctioned party's conduct did not rise to a level that would warrant the more severe sanctions of dismissal or default. See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, 763–64 (1980) (holding "[b]oth parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to comply with discovery orders"); Excellent Home Care Servs., LLC v. FGA, Inc., No. 13 CV 5390, 2017 WL 9732082, at *12 (E.D.N.Y. June 5, 2017) (ordering plaintiff to re-produce and produce certain documents,

6

respond to interrogatories, and pay defendants' attorney's fees where defendant sought sanctions which included dismissal).

Rule 37's listed sanctions are non-exclusive, and the Rule explicitly contemplates that courts will order other sanctions so long as they are "just" and "commensurate with the noncompliance." See Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2017 WL 3671036, at *19, 21 (quoting Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007)). "The court's inquiry in deciding whether to impose less severe sanctions, such as fines and cost-shifting, focuses primarily on the misconduct of the party to be sanctioned." Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc., No. 18 CV 1471, 2020 WL 1172635, at *6 (E.D.N.Y. Feb. 20, 2020), report and recommendation adopted, 2020 WL 1166616 (E.D.N.Y. Mar. 11, 2020).

In evaluating whether to impose more serious discovery sanctions, courts consider the following non-exclusive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." Southern New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010) (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)). Significant prejudice to the moving party may counsel for a harsher sanction, but a lack of prejudice to the moving party does not counsel against the imposition of a sanction. Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc., 2020 WL 1172635, at *6. Courts "have consistently rejected the 'no harm, no foul standard' with respect to evaluating discovery sanctions." Southern New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d at 148.

II.  Analysis

    A.  Flight Quote Financials

In responding to defendants' letter motion, plaintiff contends that prior to the November 2021 Order of this Court, he had produced over 7,500 pages of discovery, including "the relevant financial information" in his custody, control and possession at the time. (Pl.'s Ltr. at 3). In his letter, plaintiff further claims that he "is continuing to provide the relevant documents as and when they are created or become available." (Id.) This production referred to by plaintiff was provided before the Court's November 29, 2021 Order and therefore is not relevant or responsive to the Order.

Plaintiff also argues that defendants seek financial information that is "not relevant" to the claims in the case, including documents "relating to flight quotes" and information relating to successful bookings as a result of those quotes. (Pl.'s Ltr. at 4). Plaintiff argues that in light of the district court's dismissal of the intentional interference with contract claim, these documents are no longer relevant because they relate to the damages arising out of plaintiff's prospective business opportunities. (Id.) Further, he contends that producing these "utterly irrelevant" documents "which consist of approximately 3000 pages of proprietary information of non-parties, is highly burdensome, both to [plaintiff] and his counsel." (Id.)

In response, defendants note that even though the intentional interference with contract claim was dismissed, plaintiff has indicated in responses to interrogatories that his damages include lost broker commissions because he had to book "off-fleet" due to the damage to his reputation. (Defs.' Ltr. at 2). Defendants also challenge plaintiff's claim of burden given that he is able to identify 3,000 responsive documents, suggesting that they have already been collected. (Id.) Even beyond that, and most troubling to the Court, in his affidavit dated January 26, 2022,

8

attached to his counsel's letter, plaintiff asserted that he

> provided all documents and information in my custody, possession or control, as of this date, relating to defendants' request for . . . all documents related to flight quotes issued by plaintiff from October 3, 2019 to the present, and any information relating to successful bookings made as a result of those quotes.

(Sullivan Jan. Aff.[10] at ¶ 5). At the same time, plaintiff argues in the substance of his letter that the 3,000 pages of documents exist,[11] had not been produced, and did not need to be produced. (Pl.'s Ltr. at 4). Plaintiff fails to address this discrepancy in his filings.

Moreover, to the extent that plaintiff questions the relevance of the flight quote documents and argues burden, this Court explicitly Ordered the production of these documents in its November 29, 2021 Order. (Order at 8–9). Plaintiff's recourse should have been to raise these issues prior to the issuance of the Order or to seek reconsideration of the Court's Order. Instead, plaintiff simply decided not to produce the documents. Even if plaintiff had not determined the burden of production at the time the issue was first raised with the Court, plaintiff could have sought the Court's intervention to modify the Order. However, not only did plaintiff willfully and unilaterally decide not to comply, he has ignored the Court's deadline for production for over two months, requiring defendants and this Court to expend resources in an effort to obtain plaintiff's compliance with the Court's Order.

B. Tax Returns

In response to defendants' request for plaintiff's tax returns for the years 2017 through 2020, plaintiff asserts that since the issuance of the Court's Show-Cause Order, he has produced

---

[10] Citations to "Sullivan Jan. Aff." refer to plaintiff's affidavit signed January 26, 2022, and attached as Exhibit A to plaintiff's letter filed March 18, 2022.

[11] In his affidavit signed March 18, 2022, and attached as Exhibit B to plaintiff's counsel's letter filed March 18, 2022, plaintiff represented that "[p]rior to January 2022, the relevant financial records and information, cited in the Court's order dated November 29, 2021, did not exist." (Sullivan Mar. Aff. ¶ 3). It is unclear how these 3,000 pages of documents related to flight quotes and bookings from October 3, 2019 to the present somehow did not exist prior to January 7, 2022.

9

all relevant tax returns. (Pl.'s Ltr. at 5). However, plaintiff initially provided an affidavit on January 26, 2022, stating that he did not have the tax returns at issue in his possession, custody or control. (Sullivan Jan. Aff. ¶ 3). Thereafter, as defendants note, despite his claim in January 2022 that he did not have these tax returns, plaintiff subsequently produced these very returns three months later on March 17, 2022. (Defs.' Ltr. at 2). According to plaintiff, "[p]rior to January 2022, the relevant financial records and information, cited in the Court's order dated November 29, 2021, did not exist." (Sullivan Mar. Aff. ¶ 3). Defendants question the "sudden appearance" of these returns, as well as whether these were in fact the filed returns or documents created by plaintiff after the fact. (Defs.' Ltr. at 2–3). Defendants request an Order requiring plaintiff to produce authorizations for plaintiff's filed personal and business tax returns to verify the authenticity of the documents produced. (Id. at 3, n.1).

The Court agrees that plaintiff has failed to provide an adequate explanation as to why he did not originally produce these tax returns, claiming he did not have custody or control over them, only to now produce them. Plaintiff is therefore Ordered to provide: 1) a sworn Affidavit attesting to the fact that these are the authentic tax returns filed for the years in question and providing their date of filing, and 2) authorizations to allow defendants to obtain the original returns filed with the Internal Revenue Service.

C. Police Report

In responding to defendants' request for documents to be produced in "native format," plaintiff claimed he was unable to because his laptop was stolen on August 13, 2020. (ECF No. 45 at 3). Defendants then sought a copy of the police report that plaintiff claimed he had filed reporting the theft. (Id.) Plaintiff contends that he produced "an unofficial copy of the police report" prior to the filing of the status report in which defendants sought sanctions against

10

plaintiff. (Pl.'s Ltr. at 4). Plaintiff claims that the report was included in his production of October 8, 2021, although his current counsel could not confirm that. He further claims that he provided another copy on "January 26, 2021 [sic]." (Id. at 4 & n.1). Finally, on March 17, 2022, plaintiff produced an "official" copy of the police report. (Id. at 5). Plaintiff contends that despite defendants' "unsubstantiated and meritless claims of spoliation," plaintiff has not intentionally or willfully withheld and information or documents." (Id. at 6).

Defendants dispute that an "unofficial" copy of the police report was produced in the October 2021 production and contend that the report produced on January 26, 2022 only "heightens Defendants' spoliation concerns and confirms that Plaintiff was not truthful during his deposition." (Defs.' Ltr. at 3). Specifically, defendants note that in his deposition on May 11, 2021, plaintiff testified that he was in possession of the police report relating to his stolen laptop. (Id.) However, the "official" report that plaintiff eventually produced on January 26, 2022 indicates that the report was not filed until August 5, 2021, nearly three months *after* plaintiff's deposition when he said he had the report in his possession and more than one year after the alleged theft in August 2020. (Id.) Apart from the discrepancies between the date of the alleged theft and the official report, defendants made the request for the native documents on March 31, 2020, so even if the computer was stolen, the theft occurred almost five months after the request and plaintiff has failed to explain why he did not produce the requested documents prior to the alleged theft of the computer. (Id.) These inconsistencies are unfortunately just some of several that have come to derail discovery progress in this case and taint plaintiff's credibility.

    D.    <u>Analysis</u>

The Court is troubled by plaintiff's conduct in connection with the discovery in this case

11

and most particularly in his lack of compliance with a clear Order of the Court issued on November 29, 2021. Plaintiff was Ordered to provide documents by January 7, 2022 but failed to do so until prompted by defendants' request for sanctions in their status report dated January 26, 2022. Even then, plaintiff still has not sufficiently complied with the November 2021 Order, notwithstanding his partial supplementation of documents in March 2022. In a footnote to his response to the Order to Show Cause, plaintiff's counsel claims that the failure to provide responsive documents by January 7, 2022 was due to an oversight on counsel's part in that he "initially misread the order and overlooked the deadline," and so the lack of timely production was not due to "any willful act or omission" by plaintiff. (Pl.'s Ltr. at 5, n.2). Although plaintiff claims that all documents responsive to the November 2021 Order have now been produced and so defendants have not been prejudiced by this delay (id.), a lack of prejudice does not relieve plaintiff from his flagrant noncompliance with this Court's Order.

More importantly, apart from the failure to timely comply with the Court's deadline, plaintiff also unilaterally determined that certain documents Ordered for production were "utterly irrelevant" and too burdensome to produce. As noted, plaintiff had several options including a request to modify the Court's Order or have the Court reconsider the Order. Instead, plaintiff took it upon himself to decide not to produce documents ordered by the Court. In addition, plaintiff's prior statements regarding his tax returns and the police report have raised questions about the authenticity of the returns produced and the credibility of certain prior representations made in his deposition and in submissions to the Court.

## CONCLUSION

Accordingly, the Court determines that sanctions are appropriate in this case to address plaintiff's misconduct. While defendants request that the action be dismissed, the Court Orders

plaintiff to reimburse defendants' attorney's fees and costs necessitated by having to file the earlier motion to compel and this instant motion seeking sanctions. This sanction should sufficiently deter plaintiff from continued non-compliance and if it does not, the plaintiff is on notice that he could face much more serious consequences including dismissal in the future.

Defendants' counsel are Ordered to file a motion for fees with the Court, including a proposed hourly rate for work performed and billing statement for hours worked by **December 9, 2022**; plaintiff may respond to defendants' request by **December 30, 2022**, and defendant may reply by **January 13, 2022**. Plaintiff is further Ordered to provide the 3,000 pages of documents previously found to be relevant on or before **December 1, 2022**, along with a sworn Affidavit attesting to the fact that what he has produced are the authentic tax returns filed for the years in question and detailing when he filed them, and authorizations to allow defendants to obtain the original returns filed with the Internal Revenue Service.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

    **SO ORDERED.**

Dated: Brooklyn, New York
       November 10, 2022

                                            */s/ Cheryl L. Pollak*
                                            Cheryl L. Pollak
                                            United States Magistrate Judge
                                            Eastern District of New York