UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JUSTIN SULLIVAN,

                          Plaintiff,

            -against-

AIRCRAFT SERVICES GROUP, INC. and
KERRY SAILLER,

                          Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
19 CV 6500 (MKB) (CLP)

**POLLAK**, United States Magistrate Judge:

On November 18, 2019, plaintiff Justin Sullivan filed an action against defendants

Aircraft Services Group, Inc. ("ASG"), and Kerry Sailler, alleging claims of libel per se,

intentional interference with contract and with advantageous business relationships,[1] and

violations of New York's General Business Law Section 349.  (ECF No. 1).  On January 26,

2022, and March 25, 2022, defendants requested sanctions pursuant to Rule 37 of the Federal

Rules of Civil Procedure, based on plaintiff's failure to comply with this Court's Order of

November 29, 2021.  By Order dated November 10, 2022, this Court denied defendants' motion

seeking to dismiss the action, but Ordered plaintiff to reimburse defendants' attorney's fees and

costs necessitated by having to file an earlier request to compel[2] and the motion for sanctions.[3]

(ECF No. 55).

Currently pending before this Court is defendants' December 9, 2022 Joint Motion for

---

[1] On March 8, 2021, plaintiff's claim of Intentional Interference with Contract and Interference with Prospective Business Relationships was dismissed by the district court.  (ECF No. 42).

[2] Defendants Sailler and ASG filed letter motions to produce on July 15, 2021 and July 16, 2021, respectively.  (ECF Nos. 45-46).

[3] Defendants requested sanctions in their January 26, 2022 Status Report.  (ECF No. 52).  They repeated this request in their March 25, 2022 Letter.  (ECF No. 54).

Fees, in which they seek a total of $29,814 for time spent in connection with the earlier request to compel and motion for sanctions.  Plaintiff filed papers in opposition to this fee request on December 30, 2022 and defendants then filed a reply on January 13, 2023.  Also pending before the Court is plaintiff's January 17, 2023 motion to strike certain allegedly "mischaracterized, prejudicial, irrelevant, and immaterial assertions" in defendants' reply.  Defendants opposed this motion on January 24, 2023.

For the reasons set forth below, the Court respectfully recommends defendants be awarded $19,915.35 in fees incurred in connection with their motion to compel and motion for sanctions.  Additionally, the Court recommends that plaintiff's Motion to Strike be denied.

<u>DISCUSSION</u>

A. <u>Attorney's Fees and Costs</u>

The Court previously determined that defendants are entitled to an award of fees and costs based on plaintiff's failure to comply with the Court's November 29, 2021 discovery order. (ECF No. 55).  Specifically, the Court found that plaintiff had failed to produce 3,000 pages of documents relating to flight quote financials, failed to adequately explain his delayed production of tax returns he had previously stated did not exist, and provided inconsistent statements regarding the theft of his computer.  (<u>Id.</u> at 8-11).  The Court must now determine whether the amount of fees requested by defendants is reasonable.

1) <u>Legal Standards</u>

When awarding attorneys' fees and costs incurred as a sanction under Rule 37, courts must determine whether such expenses are reasonable.  See <u>Pegoraro v. Marrero</u>, No. 10 CV 00051, 2013 WL 55829, at *2-3 (S.D.N.Y. Jan. 4, 2013), <u>order adopted</u> 2013 WL 1448769 (S.D.N.Y. Apr. 9, 2013); <u>Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's</u>

Democratic Republic, No. 10 CV 05256, 2012 WL 5816878, at *2-3 (S.D.N.Y. Nov. 14, 2012);

Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 255 (S.D.N.Y. 2012).  "The district court

retains discretion to determine . . . what constitutes a reasonable fee."  Millea v. Metro-North

R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d

748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys'

fee award is the 'lodestar' amount, which results in a presumptively reasonable fee."  Dunn v.

Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1,

2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report and recommendation

adopted 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co.,

658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting

point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182,

188-90 (2d Cir. 2008).

    To determine the lodestar amount, a court must determine "the number of hours

reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate."

Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1

(E.D.N.Y. Mar. 19, 2013) (internal citations and quotation marks omitted), report and

recommendation adopted 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v.

Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar.

28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of

calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by

a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v.

Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (quoting Perdue v. Kenny A., 559 U.S. at 553). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Id. at 167 (quoting Perdue v. Kenny A., 559 U.S. at 554); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." Millea v. Metro-North R.R. Co., 658 F.3d at 167. As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances." 2012 WL 676350, at *5, n.8.

2) Analysis

In connection with the request for fees, defendants have submitted a Certification of Services, sworn to by Marissa Koblitz Kingman, Esq., a partner in the firm of Fox Rothschild LLP (the "Fox Firm"), counsel for defendant ASG, and a Certification of Services in Support of Motion For Attorneys' Fees, sworn to by Thomas M. Mealiffe, a partner at Nixon Peabody LLP ("Nixon Peabody"), counsel for defendant Kerry Sailer. (ECF No. 56-1, 56-3).

According to Ms. Kingman, there were two partners from the Fox Firm who worked on this matter in connection with the motions for sanctions: Robert J. Rohrberger, Esq., who spent 4.7 hours, and Ms. Kingman, who spent 19.3 hours. (Kingman Cert.[4] ¶ 9). According to Ms. Kingman's certification, Mr. Rohrberger's going rate is $775 per hour and Ms. Kingman's going

---

[4] Citations to "Kingman Cert." refer to the Certification of Services, submitted by Marissa Koblitz Kingman, Esq., dated 12/9/23. (ECF No. 56-1).

rate is $510 per hour.  (Id. ¶¶ 6, 7).  In addition, Danielle Gunning, a paralegal, also spent 10.6 hours in connection with the motions and her going rate is $300 per hour. (Id. ¶¶ 8, 9).  In total, the Fox Firm seeks $10,411.00 for 34.6 hours of work performed in connection with the motions. (Id. ¶¶ 9, 15).

Mr. Mealiffe, a partner with Nixon Peabody's Complex Commercial Dispute practice group, seeks an additional $19,403 in fees, representing the 25.3 hours of time that he expended on these motions. (Mealiffe Cert.[5] ¶¶ 3-7).  His standard rate is $785 per hour. (Id. ¶ 5).  Included in the total fees requested by Nixon Peabody, are also 28.7 hours of time expended by Eric Ferrante, an associate in Nixon Peabody's Complex Commercial Dispute group, whose going rate is $535 per hour. (Id.  ¶¶ 4-7).

In total, defendants' counsel seek $29,814 in sanctions, representing 88.6 hours of time.

a)  <u>Hourly Rates</u>

In order to calculate the lodestar, the Court must first determine a reasonable hourly rate for the legal services performed.  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d at 190.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate . . ."  Id. at 186 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)).  Additionally, the Second Circuit has adopted the following factors, <u>inter alia</u>, to guide the inquiry as to what constitutes a reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is

---

[5] Citations to "Mealiffe Cert." refers to the Certification of Services in Support of Motion For Attorneys' Fees, submitted by Thomas M. Mealiffe, dated 12/8/23. (ECF No. 56-3).

> fixed or contingent; (7) the time limitations imposed by the client
> or the circumstances; (8) the amount involved and the results
> obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12)
> awards in similar cases.

Id. at 186 n.3 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-719 (5th Cir.

1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).  A number of

recent cases have considered these factors when awarding attorneys' fees.  See Lisnitzer v. Shah,

No. 11 CV 4641, 2022 WL 3931388, at *2 (E.D.N.Y. July 6, 2022), report and recommendation

adopted sub nom. Lisnitzer v. Zucker, 2022 WL 3914964 (E.D.N.Y. Aug. 31, 2022), amended

by 2023 WL 2020963 (E.D.N.Y. Feb. 15, 2023) (adjusting award by 62 cents); see also Smith v.

City of New York, No. 19 CV 6198, 2022 WL 939711, at *4 n.3 (E.D.N.Y. Mar. 28, 2022).

> Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources
> required to prosecute the case effectively . . ., the timing demands
> of the case, whether the attorney might have an interest
> (independent of that of his client) in achieving the ends of the
> litigation or might initiate the representation himself, whether the
> attorney might have initially acted pro bono . . ., and other returns
> (such as reputation, etc.) the attorney might expect from the
> representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184.

> In determining the appropriate rate to be charged, the Second Circuit has indicated that

courts may consider evidence of prevailing rates for similar services beyond the fee application

itself.  See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir.

1989).  In addition to the parties' evidentiary submissions, the Court may consider its own

experience and familiarity with the case and with rates generally charged.  See Cruz v. Local

Union No. 3, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates

[is] well within [its] discretion'") (quoting <u>Cabrera v. Jakobovitz</u>, 24 F.3d 372, 393 (2d Cir.), <u>cert. denied</u>, 513 U.S. 876 (1994)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'"  <u>Simmons v. New York City Transit Auth.</u>, 575 F.3d 170, 174 (holding that when awarding attorneys' fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

On December 30, 2022, plaintiff objected to the request for fees, arguing that the hourly rates sought by defendants' counsel are unreasonable, noting that judges in this district have found that prevailing rates for counsel in this district are "up to $450 per hour for partners and $325 per hour for associates in fee shifting cases." (Pl.'s Opp.[6] at 2 (citing <u>Scelsi v. Habberstad Motorsport, Inc.</u>, No. 19 CV 4315, 2021 WL 6065768, at *3 (E.D.N.Y. Dec. 22, 2021))).

     i.    <u>The Fox Firm Rates</u>

Here, the Fox Firm, defendant ASG's counsel, charges a going rate of $775 per hour for Mr. Rohrberger, a partner in the Fox Firm, and a going rate of $510 per hour for Ms. Kingman, who is also a partner in the Firm.  (Kingman Cert. ¶¶ 6, 7).  Defendants do not provide any information about Mr. Rohrberger's educational background or experience, just that he is a partner in the Fox Firm and that he spent 4.7 hours in connection with the matter at issue.  Ms.

---

[6] Citations to "Pl.'s Opp." refer to Plaintiff, Justin Sullivan's, Opposition to Aircraft Services Group, Inc. and Kerry Sailler's Joint Motion for Fees, dated 12/30/22.  (ECF No. 58).

Kingman provides some additional information about herself, noting the courts in which she is admitted to practice and stating that she has 9 years of experience handling commercial litigation cases. (Id. ¶ 3). According to Ms. Kingman, her regular hourly rate is $510, and she expended 19.3 hours in connection with this discovery dispute and related motions. (Id. ¶¶ 7, 9).

With respect to counsel's requested fee rates, these rates as listed in the Kingman Certification are higher than the rates generally found reasonable in the district for the type of work performed in connection with the two motions at issue here. See Scelsi v. Habberstad Motorsport, Inc., 2021 WL 6065768, at *3. However, it appears from the Kingman Certification that in seeking fees in connection with the two motions, the Firm used rates that are significantly lower than counsel's listed regular hourly rates for both Ms. Kingman and Mr. Rohrberger. If the $1,998 total amount for fees requested for Mr. Rohrberger is divided by the 4.7 hours he spent on these motions, it appears that the Fox Firm is requesting an hourly rate of approximately $425 per hour. Dividing the $5,404 in total fees requested for Ms. Kingman's 19.3 hours of time, results in an hourly rate of $280 per hour. Indeed, in a letter dated January 13, 2023, defendants confirmed that in seeking the instant fees, they reduced their rates to $425 for Mr. Rohrberger and $280 for Ms. Kingman, who was an associate during much of the time. (Defs.' Ltr.[7] at 3). Not only do these reduced rates more accurately reflect the going rates for fees awarded in this district, but they are consistent with the prevailing rates acknowledged by plaintiff. Thus, the Court finds the Fox Firm's proposed reduced attorney rates reasonable.

However, the Fox Firm's request for rates of approximately $283.87[8] per hour for paralegal time is high considering the rates that are generally awarded for paralegal work in the Eastern District of New York. Courts in this district have generally awarded hourly rates for

---

[7] Citations to "Defs.' Ltr." refer to the letter submitted by the Fox Firm, dated January 13, 2023. (ECF No. 59).
[8] This amount was calculated by dividing the $3,009 requested by the 10.6 hours Ms. Gunning worked.

paralegal assistants ranging from $70 to $100. Calle v. Pizza Palace Cafe LLC, No. 20 CV 4178, 2022 WL 609142, at *13 (E.D.N.Y. Jan. 4, 2022); see Du v. CGS Metal Fabrication Inc., No. 19 CV 1821, 2022 WL 987316, at *12 (E.D.N.Y. Jan. 14, 2022) (holding that the "requested rate of $150 for . . . paralegals' work is higher than typically awarded in this district" and reducing that amount to $100 per hour).

Defendants concede that the amount charged by Ms. Gunning, the paralegal from the Fox Firm who worked on this matter, was not reduced and that her time was charged at the rate of $285 per hour. (Defs.' Ltr. at 3). However, in a footnote, the defendants indicate they would have no objection to reducing her rate to $200 per hour. (Id., n.2). The Court finds this rate to be still higher than that generally awarded in this district for paralegal time, and finds $150 per hour to be a more appropriate rate, particularly when compared to the rate charged by a senior associate who is now a partner in the firm.

Thus, the Court respectfully recommends awarding the Fox Firm fees at the hourly rate of $425 and $285 for work performed by Mr. Rohrberger and Ms. Kingman, respectively, and at the hourly rate of $150 for work performed by Ms. Gunning. When multiplied by their respective hours worked, as alleged, this comes to a total of $9,088 in fees for the Fox Firm.

ii.   Nixon Peabody's Rates

In their fee request, the hourly rates being charged by Nixon Peabody on behalf of defendant Sailler are also significantly reduced from their standard hourly rates and, as a result, are comparable to those requested by the Fox Firm. Mr. Mealiffe, a partner in Nixon Peabody and lead attorney for defendant Sailler, who has practiced for 17 years, seeks an hourly rate of $425, and the associate, Eric Ferrante, with 8 years of experience, seeks fees at the rate of $300 per hour. (Mealiffe Cert. ¶¶ 3, 4). According to Mr. Mealiffe, these rates are significantly

reduced from the rates the firm generally charges, which are $785 per hour and $535 per hour, respectively. (Id. ¶ 5). The Court finds that these reduced rates are reasonable. When multiplied by their respective hours worked, as alleged, this comes to a total of $19,362.50.[9]

    b) <u>Number of Hours</u>

The next step in awarding attorney's fees is determining the reasonableness of the hours expended by counsel. <u>See, e.g.</u>, <u>Irving v. G. & G. Instrument Corp.</u>, No. 19 CV 1597, 2020 WL 1536325, at *5 (E.D.N.Y. Mar. 31, 2020). In reviewing a fee application, the court should exclude "excessive, redundant or otherwise unnecessary" hours. <u>Bliven v. Hunt</u>, 579 F.3d 204, 213 (2d Cir. 2009) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. at 434); <u>Gesualdi v. Dove Mason Supply Co., Inc.</u>, No. 19 CV 1181, 2020 WL 1538746, at *6 (E.D.N.Y. Mar. 11, 2020).

If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." <u>Louis Vuitton Malletier, S.A. v. LY USA, Inc.</u>, 676 F.3d 83, 111 (2d Cir. 2012); <u>see also</u> <u>Struthers v. City of New York</u>, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because those requested for responding to motion papers were "excessive"); <u>Jemine v. Dennis</u>, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and complexity of the submissions and calculations" did not reflect the hours expended); <u>Quinn v. Nassau Cnty. Police Dep't</u>, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); <u>American Lung Ass'n v. Reilly</u>, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyers' hours).

---

[9] The total stated in the Mealiffe Cert. is $19,403. However, this includes a total fee for Mr. Mealiffe of $10,793, whereas his rate ($425) times hours worked (25.3) actually equals $10,752.50.

As noted above, both defendants' firms have submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered.  According to the Certification of Ms. Kingman, the Fox Firm expended a total of 34.6 hours in connection with the two motions (Kingman Cert. ¶ 9), and Nixon Peabody expended a total of 54 hours. (Mealiffe Cert. ¶ 7).  In total, the two firms spent 88.6 hours on two motions.

Plaintiff argues that defendants' fee request is unreasonable in that it seeks fees spanning a period of nearly two years, contending that much of the work was not "necessitated" by the filing of the two motions.  (Pl.'s Opp. at 3).  Plaintiff notes that defendants' requested expenses begin in August 2020, and extend to March 2022. (Id. at 3-4).  Plaintiff argues that ASG's counsel seeks fees unrelated to the motion to compel, including entries related to a motion to dismiss and discovery.  (Id.)  Similarly, with respect to the Sailler defendants' fees, plaintiff contends that they include fees that do not relate to the two motions, and they fail to disaggregate the difference between time spent directly on the motions and time spent on other tasks.  (Id. at 4-5).  Plaintiff urges the Court to exclude from the fees time that defendants would have to expend in reviewing plaintiff's discovery production even in the absence of the motions to compel.  (Id. at 5).

The Court ordered sanctions specifically to reimburse the attorney's fees and costs incurred as a result of the need to file the motion to compel and motion for sanctions.  (ECF No. 55).  Documents filed regarding the motion to compel include Sailler's July 15, 2021 motion to compel (3 pages, 29 pages of exhibits), ASG's July 16, 2021 motion to compel (3 pages), Sailler's July 29, 2021 letter (3 pages, 12 pages of exhibits), and the November 19, 2021 and November 23, 2021 letters requesting a conference with the Court (3 pages and 1 page respectively).  The documents filed regarding the motion for sanctions include the January 26,

2022 Joint Status Report (4 pages) and Defendants' March 25, 2022 Letter (3 pages, 16 pages of exhibits). The March 30, 2022 Show Cause Hearing was also necessitated by the motion for sanctions.

In total, the two firms seek reimbursement for 88.6 hours of work for 2 motions, comprised of a total of 20 pages of briefing (accompanied by 57 pages of exhibits) and a short hearing. The briefing itself consisted of informal letters to the Court. Here the "complexity of the submissions" does not reflect the hours expended. Jemine v. Dennis, 901 F. Supp. 2d at 393.

Instead, a review of the billing records of both firms reflect a number of entries that appear to be unrelated to the two motions. The Fox Firm's billing records include time entries from August and October of 2020, over 6 months prior to the filing of the motion to compel. (ECF No. 57-2 at 1-6). In addition, some of the entries, such as the October 6, 2021 entry "Review and analysis of Sullivan's July 12, 2021 document production," describe defendants' review of discovery, which would occur regardless of the issues underlying the two motions. (Id. at 18). Nixon Peabody's billing records also include a significant number of time entries prior to the motion to compel and entries regarding the review of production and correspondence by plaintiff, which were not necessitated by the underlying motions since they are tasks that would have been performed by counsel even in the absence of a need to file the motions. (ECF No. 57-4). These entries, seeking fees for work that would have been required in any event, explain in part why the request for 88.6 hours of work for two short letter motions appears on its face to be excessive.

For the foregoing reasons, a reduction of 30% in the requested fees is warranted. With the updated rates listed above, the Fox Firm's request for attorney's fees was $9,088 prior to reduction. With a 30% reduction, this amount would be $6,361.60. Nixon Peabody's requested

attorney's fees were $19,362.50; with a 30% reduction, they would amount to an award of

$13,553.75.  Thus, in total, the Court recommends awarding $19,915.35 in fees for both firms.

B. <u>Motion to Strike</u>

On January 17, 2023, plaintiff moved pursuant to Rule 12(f) of the Federal Rules of Civil

Procedure to strike certain assertions in defendants' January 13, 2023 Reply letter brief.

Specifically, plaintiff requested the following paragraphs be struck:

> The extreme difficulty Defendants have encountered in obtaining discovery from Plaintiff, and Plaintiff's pattern of misconduct, is further confirmed and put in high relief by the fact that, incredibly, Plaintiff has not complied with even the November 2022 Order. The Court directed Plaintiff to produce 3,000 pages of documents that were previously withheld in discovery. On December 1, 2022, Plaintiff produced 996 pages of documents. Defendant's counsel demanded the missing 2,004 pages of the documents be produced no later than January 6, 2023. Plaintiff has still not produced them and, **once again, Defendants were required to send another letter to Plaintiff in an effort to gain his compliance with this Court's discovery orders.** On January 11, 2023, Plaintiff's counsel requested yet more time to respond to Defendants' request. As of the time of this filing, Defendants have still not received the missing 2,004 pages of documents from Plaintiff.
>
> In addition, the IRS Form 8821 that Plaintiff produced must be corrected before Defendants can submit it to the IRS. **Although Defendants requested that the form be corrected on December 29, 2022, Plaintiff has still not provided the corrected form. As a result, Defendants continue to be unable to obtain Plaintiff's tax returns that the Court's November 10, 2022 Order held Defendants were entitled to obtain**.

(Pl.'s Jan. 17, 2023 Ltr. Mot.[10] at 1-2 (emphasis in original)).

Plaintiff disputes the number of letters defendants describe sending to him regarding

flight quotes.  (<u>Id.</u> at 2).  He also asserts that he met defendants' deadline for providing a

corrected tax form.  (<u>Id.</u> at 2-3).  Lastly, plaintiff argues that the paragraphs above are irrelevant

to the motion for fees before the court and are prejudicial by "inject[ing] a new supposed issue

---

[10] Citations to "Pl.'s Jan. 17, 2023 Ltr. Mot." refer to plaintiff's motion to strike.  (ECF No. 60).

into the fee-motion briefing" and including incorrect and mischaracterized information.  (Id. at 3).

In response to the dispute over letters, defendants state in a joint letter that: "Regardless of the number of letters Defendants were required to send to Plaintiff to gain his compliance with the Court's November 10, 2022, the fact of the matter is that Defendants should not have had to send any."  (ECF No. 61 at 1).  Defendants do not dispute that Plaintiff met the January 13, 2023 deadline to provide the corrected tax authorization form, but state that although the form was received the same day that defendants submitted their Reply, the form had not been received by the time defendants submitted their Reply.  (Id.)  Defendants also state that the information provided was relevant since it "demonstrate[s] the continuing issues and work caused by Plaintiff's discovery conduct."  (ECF No. 61 at 1).

In this case, plaintiff seeks an Order, pursuant to Fed. R. Civ. P. 12(f), striking specific language from defendants' Reply letter submitted in connection with the motion for sanctions. Rule 12(f) of the Federal Rules of Civil Procedure states that: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Pleadings are defined in Fed. R. Civ. P. 7(a) as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."

Here, however, defendant's Reply is not a pleading, and thus Rule 12(f) does not apply. See United States of Am. & New York State v. N. Adult Daily Health Care Ctr., 174 F. Supp. 3d 696, 699 (E.D.N.Y. 2016).  To the extent that plaintiff is concerned over certain statements in defendants' Reply letter, the conduct referenced in the letter post-dates the timeframe under

consideration by this Court in determining the fee award and thus the Court did not consider any of these incidents in determining the fee award recommended herein.

Accordingly, the Court respectfully recommends that plaintiff's motion to strike be denied.

<u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends that defendants be awarded $19,915.35 in fees incurred in connection with their motion to compel and motion for sanctions. Additionally, the Court respectfully recommends that the Motion to Strike be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 605 (2d Cir. 2008).

**SO ORDERED.**

Dated:  September 1, 2023
        Brooklyn, New York

                                                    /s/ Cheryl L. Pollak
                                                    Cheryl L. Pollak
                                                    United States Magistrate Judge
                                                    Eastern District of New York